# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFINI LAJUANA DAVIS,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant.<br>_____ / | No. 2:12-CV-0755-TLN-CMK<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

　　　　Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the court are plaintiff's motion for summary judgment (Doc. 17) and defendant's cross-motion for summary judgment (Doc. 19).

/ / /

/ / /

/ / /

/ / /

/ / /

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on September 16, 2008. In the application, plaintiff claims that disability began on April 13, 2004. Plaintiff claims that disability is caused by chronic knee pain.[1] Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on July 14, 2010, before Administrative Law Judge ("ALJ") Laura Speck Havens. In a September 24, 2010, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

    1. The claimant has the following severe impairment(s): degenerative disc disease; chronic bilateral knee pain; and depression;

    2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

    3. The claimant has the following residual functional capacity: the claimant can perform light work except the claimant can sit 6 hours in an 8-hour day, can stand for 2 hours in an 8-hour day, can walk for 2 hours in an 8-hour day, requires a sit/stand option, can occasionally lift and carry 20 pounds, can frequently lift and carry 10 pounds, can occasionally climb stairs, can never climb ladders, can occasionally balance, stoop, kneel, crouch, and crawl; the claimant has a fair ability to complete a work week without psychological interruptions, a fair ability to deal with changes in the workplace, and a fair ability to sustain an ordinary routine without special supervision, where "fair" is defined as limited but satisfactory; and

    4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on January 30, 2012, this appeal followed.

/ / /

/ / /

/ / /

---

[1] Though plaintiff never claimed disabling mental impairments in her initial application materials, the medical record shows treatment for psychological issues beginning in January 2009.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### III.  DISCUSSION

In her motion for summary judgment, plaintiff argues that the ALJ erred with respect to the opinions of Drs. Kalman, Scaramozzino, Wong, and Hill.[2]  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

---

[2]  She also states that she "strongly objects to any inference by the Commissioner in his response that she implicitly agrees with the ALJ's adverse credibility finding," she also specifically states that "a separate argument is not made solely on the basis of credibility. . . ."  Thus, the ALJ's credibility finding is not before the court.

legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

### A. Drs. Kalman and Scaramozzino

Plaintiff argues that, although the ALJ gave significant weight to the opinions of Drs. Kalman and Scaramozzino, the ALJ erred by failing to credit the doctors' findings of moderate limitations.

As to Dr. Scaramozzino, the ALJ stated:

> On July 24, 2009, the claimant underwent a psychiatric evaluation with consultative psychologist James Scaramozzino, Ph.D. (Exhibit 15F). Dr. Scaramozzino found the claimant's thought content was appropriate; her mood mildly depressed; her recent and memory intact; her concentration within normal limits; her judgment within normal limits; and her insight minimal. Dr. Scaramozzino provided diagnoses of pain disorder associated with both psychological factors and a chronic medical condition and depressive disorder not otherwise specified (Exhibit 15F, p. 4). Dr. Scaramozzino also assessed the claimant with a GAF of 60 and opined the claimant was not significantly impaired in her ability to understand and remember detailed instructions to maintain concentration and attention; to accept instructions from a supervisor and respond appropriately; and to interact appropriately with others. However, the claimant was moderately impaired in her ability to sustain an ordinary routine without special supervision due to needing assistance; in her ability to complete a normal workday/workweek without interruption at a constant pace primarily due to chronic pain; and in her ability to deal with various changes in the work setting primarily due to chronic pain (Exhibit 15F, pp. 5-6). The undersigned accorded this opinion significant weight as it is supported by the objective evidence as discussed above, including Dr. Scaramozzino's own findings.

/ / /

/ / /

/ / /

As to Dr. Kalman, the ALJ stated:

> On May 21, 2010, the claimant sought a psychiatric evaluation by Les P. Kalman, Psy. D. (Exhibit 21F). Dr. Kalman noted the claimant appeared sickly and in pain. The claimant also cried of pain in her knees and her lower back and reported feeling suicidal. The claimant also cried intermittently throughout the interview and reported that she was unable to do anything due to her knees (Exhibit 21F, p. 2). The claimant reported that she spent a weekend in jail for welfare fraud over 10 years ago but denies use of drugs or alcohol (Exhibit 21F, p. 3). Dr. Kalman found the claimant was cooperative; her speech was of average rate of volume; her eye contact was good; she had decreased memory, recalling 1 out of 3 objects after five minutes; had fair insight and judgment; and had depressed mood and constricted affect. The claimant reported vegetative signs including insomnia but her thought process was logical and goal directed with no mood swings and no emotional lability (Exhibit 21F, p. 3). Dr. Kalman provided a diagnosis of major depression related to a mental condition and assessed the claimant with a GAF of 50 (Exhibit 21F, p. 4). Dr. Kalman's assessment of the claimant included moderate limitations in her ability to accept instructions and to respond appropriately to criticism from supervisors; and mild limitations in maintaining attention and concentration for extended periods, in completing a normal workday/workweek without interruptions based on psychological symptoms and to perform at a consistent pace (Exhibit 21F, pp. 4-5). Dr. Kalman also opined work relate stressors would increase the claimant's level of impairment and opined the claimant would be unable to complete a workday approximately twice a month. With regard to the onset of the claimant's limitations, Dr. Kalman only saw the claimant on a single occasion. Thus, the onset date of 2005 appears to rely heavily on the claimant's self-reports as the noted records reviewed do not reflect ongoing symptoms dating back to 2005. Nonetheless, Dr. Kalman's assessment is generally consistent with the medical evidence of record and was therefore accorded significant weight in finding the claimant has the residual functional capacity defined above.

According to plaintiff, these doctors' findings of moderate limitations in various vocational areas do not support the ALJ's finding that plaintiff has fair abilities in those areas, where the ALJ defined "fair" as meaning satisfactory. The court agrees and finds that the ALJ erred in rephrasing moderate limitation to mean satisfactory ability. As to Dr. Kalman, the mental evaluation form he used defined "moderately limited" as meaning: "Performance of the designated work-related mental function is not totally precluded, but it is substantially impaired

/ / /

/ / /

in terms of speed and accuracy and can be performed only seldom to occasionally. . . ."[3]  While the ALJ is entitled to translate medical opinions into conclusions regarding disability, in this case the ALJ's somewhat novel rephrasing of the doctor's characterization in the negative of moderate limitations into her own positive characterization that plaintiff has a limited but satisfactory ability fails to accurately capture what Dr. Kalman meant by moderate limitations.  For example, the court cannot see how someone who is moderately limited, i.e., substantially impaired in terms of speed and accuracy and only occasionally capable of that particular function, can be said to be able to perform that function satisfactorily.

The same holds true for Dr. Scaramozzino.  Though he did not employ a standard form to document his opinions as to plaintiff's limitations, and therefore there is no way of knowing which definitions he assumed, the doctor opined that plaintiff has moderate limitations in several functional areas.  To the extent the ALJ's rephrasing of "moderately limited" to "fair ability" understated the limitations opined by Dr. Scaramozzino, the ALJ failed to articulate any reasons for assigning plaintiff a higher level of functioning than assessed by the doctor.

**B.   Dr. Wong**

As to Dr. Wong, the ALJ stated:

> On August 27, 2010, the claimant underwent a psychiatric evaluation with Patrick Wong, M.D. (Exhibit 26F). Dr. Wong noted the claimant's gait and coordination were normal.  The claimant reported being depressed for six to seven years with decline over the last year or two (Exhibit 26F, p. 1). The claimant also reported a limited, sedentary lifestyle.  Dr. Wong found the claimant was difficult to engage and lacked spontaneity.  The claimant was psychomotor retarded and gloomy; though form was linear; she had passive suicidal ideation with hopelessness; affect was gloomy, depressed in range and mood was depressed.  The claimant was able to recall 3 out of 3 objects after five minutes but reported "some" diminished concentration and diminished mental endurance during the interview.  Her insight and judgment were opined to be fair (Exhibit 26F, p. 4). Dr. Wong assessed the claimant with a diagnosis of major depression probably recurrent, moderate and a GAF of 50-60 (Exhibit 26F, p. 5).  Dr. Wong

---

[3]   While the official evaluation form uses a different definition, whether the ALJ's characterization of Dr. Kalman's opinion is supported by substantial evidence must be evaluated in the context of the definitions used by Dr. Kalman.

>also completed a Medical Source Statement wherein he opined the claimant had extreme limitation in her ability to respond appropriately to work pressures in a usual work setting; marked limitation in her ability to interact appropriately with the public and interact appropriately with coworkers; and moderate limitations in her ability to understand, carry out, and remember detailed instructions, to make judgments on simple work related decisions, to interact appropriately with supervisors and to respond appropriately to changes in a routine work setting. In support of his opinion, Dr. Wong opined the claimant had reduced stress tolerance, mental endurance, self confidence and concentration (Exhibit 26F, pp. 6-7). Further, Dr. Wong opined the claimant "barely functions sufficiently to perform the minimal activities to care for children and keep her household going" and had marked neuro vegetative symptoms (Exhibit 26F, p. 7). However, Dr. Wong only examined the claimant on a single occasion and did not have the benefit of reviewing the claimant's medical evidence (Exhibit 26F, p. 1). Dr. Wong's opinion is not supported by the objective evidence contained in the claimant's medical records and is inconsistent with the findings and opinions of Dr. Kalman and Dr. Scaramozzino. Dr. Wong appears to have relied heavily on the claimant's subjective reports. However, the reliability of the claimant's statements is questionable given the positive Waddell's signs findings suggesting overreaction and regionalization (Exhibit 25F) and her past welfare fraud arrest (Exhibits 15F, 21F), which casts doubt on the veracity of her allegations. For these reasons, I reject Dr. Wong's opinion in total.

Given that Dr. Wong did not review any medical records, his assessment is necessarily based on plaintiff's subjective complaints as well as any objective findings recorded during his one-time evaluation. A review of Dr. Wong's medical source statement shows that, of these two, he relied heavily on plaintiff's subjective complaints. For example, when asked to cite evidence supporting his assessment, Dr. Wong noted the following report from plaintiff: "Patient barely functions sufficiently to perform the minimal activities to care for children and keep her household going." Because plaintiff's subjective complaints were found to be not credible – a finding plaintiff does not challenge – the ALJ properly discounted Dr. Wong's opinions.

    **C.**    **Dr. Hill**

As to Dr. Hill, the ALJ stated:

>The undersigned considered the opinion of the claimant's treating physician, Raissa Hill, D.O., set forth on a "Physical Residual Functional Capacity Questionnaire" form dated February 9, 2009 (Exhibit 22F). In that form, Dr. Hill notes the claimant's MRI of the right knee showed meniscal tear and MRI of the lumbar spine was normal (Exhibit 22F, p. 2).

> Dr. Hill's assessment of the claimant's functional limitations included sitting for approximately 2 hours in an 8 hour day; stand/walk less than 2 hours in an 8 hour day; would need to shift positions at will from sitting, standing, or walking; would need to take unscheduled breaks during an 8 hour day; could occasionally lift and carry 10 pounds, frequently less than 10 pounds; and could never twist, stoop (bend), crouch, climb ladders or climb stairs (Exhibit 22F, pp. 4-6).  Essentially, Dr. Hill opined the claimant was unable to work an 8 hour day.  Dr. Hill's opinion is rejected as the severity of these limitations is not supported by objective medical evidence.  Furthermore, the undersigned notes Dr. Hill's opinion is not only inconsistent with the opinions of the consultative examiners, but it is also inconsistent with the opinion of the claimant's treating physician, Dr. Sidhu who opined the claimant was limited to standing or walking 2 hours in an 8 hour day with no squatting, climbing or stooping (Exhibit 1F).  Dr. Hill's findings upon examination also do not support such restrictive functional limitations and suggests Dr. Hill has relied heavily on the claimant's subjective complaints in completing this form.  However, as discussed elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.  The undersigned finds Dr. Hill's opinion to be without support from the objective evidence of record and therefore rejects this opinion.

A review of Dr. Hill's medical source statement reflects, as the ALJ noted, a lack of objective evidence supporting the doctor's conclusions.  For example, when asked to identify the clinical findings, laboratory, and test results showing plaintiff's impairments, Dr. Hill left the section blank.  The doctor also left blank three questions on the last page of the form seeking identification of objective evidence to support the medical opinions.  Given that Dr. Hill failed to note any objective evidence, the ALJ correctly concluded that the doctor's opinion must have been based largely on plaintiff's non-credible subjective complaints.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Plaintiff's motion for summary judgment (Doc. 17) be granted;
2. Defendant's cross-motion for summary judgment (Doc. 19) be denied; and
3. This matter be remanded for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 5, 2014

　　　　　　　　　　　　　　　　　　　　/s/ Craig M. Kellison　　　　　　　　
　　　　　　　　　　　　　　　　　　　　CRAIG M. KELLISON
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE